UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                        )<br>)<br>TYRELL HAMPTON,          )<br>)<br>Defendant  )<br>) | Docket No. 1:19-cr-10261-NMG |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through the United States Attorney for the District of Massachusetts and undersigned Assistant United States Attorney, in accordance with the United States Sentencing Commission Guidelines Manual (hereinafter, "the Guidelines" or simply, "U.S.S.G."), hereby submits this Memorandum in support of its position on sentencing. Based upon the Defendant's Guidelines sentencing range, the statutory sentencing factors set forth in 18 U.S.C. § 3553, the plea agreement entered into by the parties (D.E. 49), and for the reasons set forth in the government's motion for a downward departure (D.E. 95), <u>the government recommends that Defendant be sentenced to 7 months imprisonment, 24 months of supervised release, and a mandatory special assessment of $100</u>. This sentence requires a downward departure from Defendant's applicable Guidelines sentencing range, and is "sufficient, but not greater than necessary" to achieve the goals of sentencing. 18 U.S.C. § 3553(a).

I.   **FACTUAL SUMMARY**

In June 2019, a source of information for the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") advised investigators that Defendant was offering firearms for sale in the District of Massachusetts. The source produced messages from Defendant on Facebook in which

1

Defendant offered firearms for sale, including photographs of firearms. Shortly thereafter, ATF investigators arranged for a controlled purchase of firearms between an undercover officer and Defendant. The details of the illegal transaction were negotiated by electronic and voice communication. *See* Presentence Investigation Report ("PSR"), revised September 8, 2020, at ¶ 10. Defendant and the undercover officer had never met prior to negotiating the illicit transaction.

Defendant illegally sold the undercover officer two handguns and ammunition on June 27, 2019, at Defendant's residence in Brockton, Massachusetts, for $2,200 U.S. currency. *See* PSR at ¶ 10. One handgun was a Taurus G2c 9mm Luger caliber pistol, the second handgun was Glock 9mm Luger caliber pistol, and the ammunition was 21 rounds of 9mm Luger caliber ammunition. *Id*. Defendant never asked the undercover officer for any identifying information or checked whether the undercover officer was duly licensed to possess the firearms or had any criminal convictions that disqualified them for lawfully possessing the firearms. *See* PSR at ¶ 9.

Defendant was arrested the following day, June 28, 2019, with $1,700 of the U.S. currency from the illegal firearms transaction in his pocket. Investigators traced the firearms Defendant sold to the undercover officer to a straw purchaser in Georgia and a firearms trafficker with whom the straw purchaser was working, Richard Philippe ("Philippe"). *See* PSR at ¶¶ 8, 10. Between April 2019 and June 2019, Philippe likely trafficked in excess of 100 firearms from Georgia into Massachusetts, with the intention of illegally selling those firearms out of warehouse space he controlled in Taunton. *Id*. Philippe was Defendant's source of firearms. *Id*. Philippe was arrested several days after Defendant.

Defendant purchased approximately 14 firearms from Philippe at the Taunton warehouse.

*See* PSR at ¶ 11; *but see* Section III, a. (Guidelines Calculations), *infra*. Defendant knew Philippe only as "Rich," and met him at the Taunton warehouse on approximately eight occasions to negotiate the purchase of firearms. Defendant attempted to re-sell the firearms he purchased from Philippe for profit primarily through social media. *See* PSR at ¶ 15. Defendant also attempted to broker sales of firearms still in the possession of Philippe and others by posting photographs of the firearms on social media and advertising them for sale.

## II.   PROCEDURAL HISTORY

Defendant was arrested on June 28, 2019, on a criminal complaint. He made his initial appearance in federal court on July 1, 2019. On July 25, 2019, a grand jury seated in Boston returned the Indictment charging Defendant with one count of being a Felon in Possession of a Firearm, specifically the Taurus G2c 9mm pistol and the Glock 9mm pistol he sold to the ATF undercover officer, in violation of 18 U.S.C. § 922(g)(1). On February 25, 2020, Defendant pled guilty to the single count charged in the Indictment, pursuant to a plea agreement with the government. *See* PSR at ¶ 2. The plea agreement between parties pursuant to Fed. R. Crim. P. 11(c)(1)(B), was filed the next day, February 26, 2020. *See* D.E. 49. The Court has ordered Defendant's sentencing be continued at the request of both parties at least five times, pending the outcome of related litigation. *See* Orders Allowing Motions to Continue, D.E. 58, 66, 68, 81, 91.

Defendant was initially ordered detained pending trial following his initial appearance. *See* Order of Detention Pending Trial, July 3, 2019, D.E. 13. Detention was based, in part, on the apparent significance of Defendant's criminal history, which includes multiple felony convictions for controlled substance offense. *Id*. Further investigation of the facts underlying Defendant's prior convictions confirmed that Defendant would not be subject to enhanced penalties based upon

his criminal history. Specifically, because of the way the Guidelines defines a "prior sentence," Defendant did not sustain at least two prior felony convictions of a controlled substance offense for the purpose of computing his criminal history score. See U.S.S.G. § 4A1.2(a)(2); PSR at ¶ 33. A further hearing was held by the magistrate judge on the issue of Defendant's detention on September 4, 2019, and Defendant was released on conditions over the government's objection. Defendant served approximately 2 months and 13 days in custody prior to his release on conditions.

### III. DETERMINING THE SENTENCE

#### a. Guidelines Calculations

While the Guidelines are advisory and not mandatory, *United States v. Booker*, 543 U.S. 220 (2005), the First Circuit has made clear that "the guidelines still play an important role in the sentencing procedure, so that [ ] a court should ordinarily begin by calculating the applicable guideline range." *United States v. Gilman*, 478 F.3d 440, 445 (1st Cir. 2007); *see Gall v. United States*, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Sentencing Guidelines should be the starting point and the initial benchmark."). Probation determined that Defendant's total offense level is 13, based upon: i.) a base offense level of 14 because Defendant was a prohibited person; ii.) a two-level enhancement because the offense involved between three and seven firearms; and iii.) a three-level reduction for acceptance of responsibility. PSR at ¶¶ 17-27. Probation assigned Defendant criminal history category III and concluded that his Guidelines sentencing range was 18 months to 24 months imprisonment.

The government agrees that Probation's calculations are accurate based on the information it possessed at the time of its investigation in 2020; however, that information is now incomplete in one material respect. Subsequent to Probation's investigation, Defendant provided sworn

testimony in related litigation concerning the number of firearms he possessed. *See* Exhibit 1, Transcript, December 16, 2021. Defendant testified that he purchased "around 14." *Id*. at 5:25-6:4. Accordingly, the offense level computation should include a four-level enhancement for the number of firearms involved in the offense, not the two-level enhancement Probation applied. U.S.S.G. § 2K2.1(b)(1). The new total offense level is 15. Based on Probation's scoring of Defendant's criminal history and assignment of criminal history category III, Defendant's Guidelines sentencing range is 24 months to 30 months imprisonment.

### b. The Plea Agreement

As pertinent here, the plea agreement in this case provides that Defendant enter a plea of guilty pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, and the government agree to recommend the following sentence to the Court:

   a) Incarceration for a term not to exceed the low end of the Guidelines sentencing range resulting from the offense level as calculated by the parties in Paragraph 3 and the criminal history category as calculated by the Court at sentencing;

   b) 24 months of supervised release;

   c) a mandatory special assessment of $100, which Defendant must pay to the Clerk of the Court by the date of sentencing; and

   d) forfeiture as set forth in Paragraph 6 [of the plea agreement].

The plea agreement stipulated a total offense level of 23. For the reasons set forth herein, the government now believes that Defendant's actual total offense level is 15.

### c. Application of the Section 3553(a) Factors

Under 18 U.S.C. § 3553(a), "[t]he Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. The purposes of sentencing are:

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to

5

criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

The Court should consider all of the Section 3553(a) sentencing factors and undertake "an individual assessment based on the facts presented." *Gall*, 552 U.S. at 49. "A sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." *Rita v. United States*, 551 U.S. 338, 351 (2007), and it "may not presume that the Guidelines range is reasonable," *Gall*, 552 U.S. at 50; *see Nelson v. United States*, 555 U.S. 350 (2009). In this case, examination of these factors demonstrates that imposing a Guidelines sentence with the requested downward departure is reasonable; however, the Section 3553(a) factors are not relevant to the Court's determination of the extent of the downward departure. *See Gall*, 552 U.S. at 49-50; *United States v. Davis*, 413 Fed. Appx. 312, 313 fn. 3 (1st Cir. 2011).

### i. Nature and Circumstances of the Offense, and Seriousness of the Offense

In determining the particular sentence to be imposed on Defendant by analyzing the nature and circumstances of the offense, the Court should consider the need for the sentence to "reflect the seriousness of the offense." 18 U.S.C. § 3553(a)(2)(A). This case involves the illegal possession, disposition, and proliferation of firearms. Defendant was a component part of a trafficking supply chain that delivered illegal firearms into Massachusetts. His actions are serious and placed lives in danger. As the First Circuit has quoted one district judge, there is an "epidemic of handgun violence in communities within [the District of Massachusetts]." *United States v. Politano*, 522 F. 3d 69, 72 (1st Cir. 2008).

Moreover, Defendant's crime had an adverse effect on public safety that was motivated by

6

financial gain.  Not dissimilar from the drug trafficking activity he has also engaged in, Defendant was buying and selling firearms as a means to support himself in lieu of gainful employment.  The entrepreneurial approach Defendant took to being the middleman between his supplier, Philippe, and his buyers demonstrates this financial motivation.  Defendant employed social media to broaden his market, advertised numerous firearms using photographs, and even attempted to broker transactions for firearms he knew were available but did not personally possess.  Although Defendant was only involved in the firearms black market for a short period, the danger he helped to create in Massachusetts communities is immeasurable.  The fact that Defendant disregarded the dangers caused by his conduct for the sake of his own personal financial gain is an aggravating factor that the Court should consider when imposing sentence.

### ii.  History and Characteristics of Defendant

Section 3553(a)(1) requires the Court to consider "the history and characteristics of the defendant."  Defendant was 30 years old when he was arrested.  He is now 32.  He was born in Stoughton in 1989 and spent most of his life in Brockton.  PSR at ¶¶ 49, 50.  Defendant began consuming marijuana at 16 years old, and he used marijuana regularly until his arrest in this case.  PSR at ¶ 68.  Defendant's education is limited.  He did not finish high school and instead turned to distributing drugs as a teenager.  PSR at ¶ 70.  Between the ages of 17 and 20, Defendant was convicted of multiple felony drug offenses.  He continued to have interactions with the criminal justice system into his late 20's.  *See* PSR at ¶¶ 36-47.  However, to his credit, Defendant's post-arrest conduct stands in stark contrast to his pre-arrest criminal history.

Defendant's criminal history category tends to underrepresent the significance of his history of drug trafficking offenses.  Three controlled substance felony convictions based upon separate instances of conduct taking place between October 20, 2006 and November 2, 2006, are

7

scored as only one "prior sentence" under the Guidelines due to the absence of intervening arrests. *See* PSR at ¶¶ 31, 32, and 33. And in 2011, Defendant was convicted and sentenced in Wrentham District Court for distribution of a Class B controlled substance, but the conviction was vacated due to the well-documented misconduct of the drug laboratory chemist, Annie Dookhan, and is not considered in Defendant's criminal history score. *See* U.S.S.G. § 4A1.2, app. n. 6.[1] Despite several stints of incarceration resulting from these encounters with the criminal justice system, Defendant failed to maintain steady employment for most of his adult life and repeatedly backslid into drug distribution as a way to support himself.

Since Defendant's arrest, he has stopped using marijuana, maintained steady employment, and had no meaningful interactions with law enforcement or the criminal justice system. In October 2019, Defendant began working at Dunkin' Donuts. PSR at ¶ 72. His employment was interrupted by the impact of the coronavirus pandemic. *Id*. Based on information and belief, Defendant returned to Dunkin' Donuts when he was able to do so, and he is employed there currently. In June 2021, Defendant was issued a summons for Unlicensed Operation of a Motor Vehicle, while driving a motorcycle in Brockton. Defendant reported possessing a motorcycle learner's permit at the time. That case was dismissed at Defendant's arraignment on July 22, 2021. Besides this incident, the government is not aware of any other interactions Defendant has had with law enforcement since his arrest in this case. It appears that Defendant has successfully reversed some of the past patterns of behavior that led him to recidivate, and that he has achieved a measure of personal growth and responsibility.

---

[1] In addition, the record of the case does not appear in the PSR.

### iii.  Respect for the Law and Just Punishment

Under Section 3553(a), the Court must also consider the need for the sentence imposed to promote respect for the law and to provide just punishment for the offense.  18 U.S.C. § 3553(a)(2).  As discussed herein, Defendant's offense conduct and related conduct is serious, in large part because of the danger that the unchecked movement of illegal firearms poses to the community.

The government recognizes that Defendant has already served a period of time in custody in connection with this case, and that further imprisonment would be extremely disruptive to the positive patterns of behavior that Defendant has established since his arrest in this case, including his ability to maintain employment.  The government also considers the importance of continued employment for Defendant, not only for his personal interest but also the public's interest, in light of Defendant's tendencies to resort to criminal conduct to support himself financially.  Nevertheless, the Court must weigh these interests against the competing Section 3553(a) interests in achieving certain sentencing goals.  On balance, a term of imprisonment is necessary in order to sufficiently promote respect for the law and to provide just punishment for Defendant's offense.

### iv.  Guidelines Range and Pertinent Policy Statements

The Guidelines themselves are a Section 3553(a) factor.  *See* 18 U.S.C. § 3553(a)(4). "The fact that § 3553(a)(4) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S.at 50, n.6.  One of the Sentencing Commission's purposes in promulgating the Guidelines was to "assure the meeting of the purposes of sentencing as set forth in section 3553(a)(2)." 28 U.S.C. §§ 991(b)(1)(A), 994(f).  The Commission wrote the Guidelines to "carry out these same § 3553(a) objectives," resulting in "a

set of Guidelines that seek to embody the § 3553(a) considerations, both in principle and in practice." *Rita*, 551 U.S. at 350.

Departures provide authorized adjustments to a Guidelines sentencing range and perform "an integral function in the sentencing guideline system." U.S.S.G. § 5K2.0, comment. (backg'd). In addition to its motion for a downward departure, *see* D.E. 95, the government directs the Court's attention to the Commission's express encouragement of a downward departure under the circumstances of this case, which have long been recognized, in practice and by statute, as a mitigating sentencing factor. U.S.S.G. § 5K1.1. comment. (backg'd).

## CONCLUSION

For the all the reasons set forth herein and in the government's motion for a downward departure, the government requests that the Court depart downwards from Defendant's applicable Guidelines sentencing range and recommends a sentence of 7 months imprisonment, 24 months of supervised release, and a mandatory special assessment of $100.

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By:   /s/ *Fred M. Wyshak, III*
      FRED M. WYSHAK, III
      Assistant United States Attorney
      617-748-3330
      fred.wyshak2@usdoj.gov

Date:   April 29, 2022

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

                                                  */s/   Fred M. Wyshak, III*
                                                  FRED M. WYSHAK, III
                                                  Assistant U.S. Attorney

Date:   April 29, 2021